UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| THE HOME BANK OF TENNESSEE, ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | No.: 3:06-cv-191 |
| ) | (VARLAN/GUYTON) |
| GARY S. BEAMS, ) | |
| ) | |
| Defendant/Counter-Plaintiff. ) | |

## **MEMORANDUM AND ORDER**

This is a diversity action removed to this Court from the Chancery Court of Blount County. Plaintiff The Home Bank of Tennessee (Bank) seeks to hold defendant Gary S. Beams (Beams) liable for $117,123.11 on a guaranty to secure payment on a promissory note. Defendant has filed an answer and counter-claim. Currently pending is plaintiff's motion for summary judgment [Doc. 8]. For the reasons that follow, the motion will be denied.

### I. *Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiff.

Defendant Gary Beams was solicited as an accommodation party on a $260,000 SBA loan to be made by the defendant Bank to Gregory Dean Francis for the purchase of the Triangle Package Store in Blount County. [*See* Doc. 15-2, Ex. 1.] On numerous occasions, the Bank's Vice-President, Eddie Rayborn, represented to Mr. Beams and Mr. Francis that

the defendant's obligation as guarantor would be limited to one-half of the outstanding principle indebtedness of the loan, plus interest thereon. [*Id.* at ¶¶ 3,4.]

When Beams received a copy of the guaranty form, he was concerned because it did not appear to comport with Mr. Rayborn's representations and with what Beams was willing to guarantee. [*Id.* at ¶ 5.] The guaranty on its face appeared to obligate Beams to the total amount of $260,000. [*Id.* at ¶ 5.] Beams claims that Mr. Rayborn explained that the difference in the language was due to the fact that it was an SBA form and that Beams could disregard the inconsistencies. [*Id.* at ¶ 7.] Beams contends that Rayborn again assured him that his obligation under the guaranty was for one-half of the outstanding principle indebtedness of the loan, plus interest thereon, and in reliance upon Rayborn's representations, defendant signed the guaranty. [*Id.* at ¶¶ 6, 7 and 8.] Defendant claims that Mr. Rayborn, however, knew that the plaintiff intended to enforce the guaranty against Beams for the full outstanding principle amount on the loan, plus interest, in the event of default, and when default occurred, plaintiff sought recovery of the entire outstanding loan indebtedness against the defendant. [Doc. 15-2, Ex. 3, at pp. 67-68.]

The record shows that the Bank and the SBA apparently required defendant to obtain an insurance policy in the amount of $150,000 to support the guaranty. [Doc. 16, Ex. 4.] In a letter dated July 26, 2005, counsel for the Bank wrote Mr. Beams a letter stating that he had unconditionally guaranteed to pay the Bank all amounts owing under the note, and that the amount currently due and owing on the note was $70,899.07 plus attorney's fees, late fees, costs and interest. [Doc. 16, Ex. E.] A little over a month later, on August 31, 2005, counsel

for the Bank sent a second letter to Beams claiming that the total owed on the note was $136,136.79. [Doc. 16, Ex. F.] It appears that the major portion of the difference in these two amounts is made up of a claim of $60,426.71 owed to the SBA. [*Id.*]

Finally, at the time of the execution of the guaranty, defendant Beams pledged 7,500 shares of Office Depot Stock to help collateralize the loan. At the time of the pledge, the market value of the collateral stock was approximately $115,350. [*See* Doc. 15-2, Ex. 1, ¶ 3.] Mr. Beams also claims that Mr. Rayborn specifically told him that the guaranty would be "one for one with the SBA, and that every dollar I was guaranteeing and securing, the SBA was responsible for a corresponding dollar." [*Id.* at ¶ 4.]

## II. *Summary Judgment Standard*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere

allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." [*Id.*] Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

### III. *Analysis*

Plaintiff contends that Beams executed an unconditional guaranty to secure payment of a note in the amount of $260,000; that the parties have an unambiguous, written document containing all of the essential terms of the arrangement between the parties; and that, despite demand having been made for the money owing, Beams has refused to pay. The Bank further contends that any alleged oral statements made by them that altered the essential terms of the written agreement are barred by the parole evidence rule which precludes any party to a contract from attempting to modify the written terms of an agreement by alleging that oral representations were made that, if included, would alter essential terms of the written agreement. Plaintiff relies on *Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77 (Tenn. Ct. App. 1983).

Defendant contends that the representations of plaintiff's representative, Mr. Rayborn, constitute promissory fraud, and that such a claim is viable under *Shah v. Racetrac*

4

*Petroleum Co.*, 338 F.3d 557, 567 (6th Cir. 2003). In that case, considering a lessee's claim of promissory fraud in the face of clear contractual provisions, the Sixth Circuit noted:

> Significantly, the parole evidence rule does not apply to allegations of fraudulent misrepresentation inducing a party to enter a contract because under Tennessee law, promissory fraud sounds in tort, not in contract.

[*Id.* at 567.] The court reasoned that parole evidence can be admitted to contradict or vary the terms of a written contract upon a showing of fraud, and many of the oral statements made by the lessor to the lessee were therefore relevant. [*Id.*]

The Tennessee Court of Appeals set forth the elements of an action for fraud in *Stacks v. Saunders*, 817 S.W.2d 587 (Tenn. Ct. App. 1990):

>   (1)  an intentional misrepresentation with regard to a material fact,
>   (2)  knowledge of the misrepresentation [sic] falsity - that the representation was made "knowingly" or "without belief in its truth" or "recklessly" without regard to its truth or falsity,
>   (3)  that the plaintiff reasonably relied on misrepresenta-tions and suffered damage, and
>   (4)  that the misrepresentation relates to an existing or past fact, or if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise.

[*Id.* at 592.] To make a showing of promissory fraud within this framework, a plaintiff must demonstrate that "a promise or representation was made with the intent not to perform." *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978). Tennessee law "does not require ambiguity when certain defects in the formation of the agreement are

5

demonstrated; parole evidence can be admitted to contradict or vary the terms or enlarge or diminish the obligation of a written instrument upon a showing of fraud." *McMillin v. Great S. Corp.*, 482 S.W.2d 152, 155 (Tenn. Ct. App. 1972).

Upon a careful review of the record, the Court finds that questions of material fact remain to be determined with respect to defendant's promissory fraud claim. Mr. Beams states that on numerous occasions Mr. Rayborn promised that this guaranty would be limited to one-half of the outstanding principle loan. The same representation was made to Mr. Francis. According to Mr. Beams, that misrepresentation was made again after he raised concerns to the language of the guaranty. There is also other extrinsic evidence from which the jury might infer that defendant was repeatedly told that his guaranty would only be enforced to the amount of one-half of the SBA loan, and that the SBA would be covering his guaranty dollar for dollar. First, defendant was only required to obtain life insurance to the extent of $150,000, a little over half of the $280,000 note. Second, the stock which defendant was required to pledge was at that time valued at slightly under half of the $280,000 note. Third, the first letter which plaintiff's counsel sent to defendant following default noted an amount owing of $70,899.07. A little more than a month later, a second letter was sent by plaintiff's counsel which nearly doubled the amount owed, apparently reflecting that plaintiff was attempting to hold defendant liable for the SBA's half of the obligation.

The defendant also claims that the contract in this case may have been the result of a mutual mistake. Although recision is not favored in Tennessee, the law provides that

recision is available where there is a mutual mistake. In *Robinson v. Brooks*, 577 S.W.2d 207 (Tenn. Ct. App. 1978), the court stated:

> When parties have apparently entered into a contract evidenced by a writing, but owing to a mistake their minds did not meet as to all the essential elements of the transaction, so that no real contract was made by them, then a court of equity will interpose to rescind and cancel the apparent contract as written, and to restore the parties to their former positions, the rule being the same whether the instrument relates to an executory agreement or to one which has been executed. Furthermore, equity will grant relief on the ground of mistake, not only when the mistake is expressly proved, but when also it is implied in the nature of the transaction. It is not essential that either party should have been guilty of fraud.

[*Id.* at 208.] The *Robinson* court also provided the elements of mutual mistake necessary to authorize recision:

> In order to authorize relief for mistake, the mistake generally must have been mutual, and it must have been material, and not due to complainant's negligence; and complainant must show injury.

[*Id.* at 209] (quoting 17A C.J.S. *Contracts*, § 418(2)). The Court finds that questions of material fact remain which affect whether defendant may obtain recision of the contract on the basis of mutual mistake.

Finally, plaintiff contends that based on the Stock Assignment Agreement, that agreement effectively transferred ownership of the stock to the Bank and, as such, the Bank is entitled to liquidate the stock. However, it is clear from the deposition testimony, affidavits and other evidence of record that neither party intended the stock assignment to be an effective transfer of ownership of the stock. Rather, even in the best case scenario for the

plaintiff, the stock was only intended to be used to guarantee the loan and was never intended as a transfer of the stock to the Bank. To the extent that plaintiff claims that the stock assignment effected as an immediate transfer of ownership, defendant would clearly be entitled to recision because of a mutual mistake.

### IV. *Conclusion*

For the reasons set forth herein, plaintiff's motion for summary judgment [Doc. 8] will be **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE