UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BRANCH BANK & TRUST COMPANY, ) | |
| f/k/a THE HOME BANK OF TENNESSEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:06-CV-191 |
| ) | (PHILLIPS/GUYTON) |
| GARY S. BEAMS, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This civil action is before the Court pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the Orders [Doc. 70, 86] of the Honorable Thomas W. Phillips, United States District Judge, for disposition of the plaintiff's Motion to Amend Pretrial Order [Doc. 68] and Amended Motion to Amend Pretrial Order [Doc. 69], and the defendant's Motion to Compel [Doc. 84] and Motion to Enforce Pretrial Order. [Doc. 85] The parties have filed responses and replies to the various motions, and they are now ripe for adjudication.

**I.     Summary of Relevant Facts**

In this matter, BB&T filed suit against defendant Gary Beams ("Beams") to enforce a loan guarantee agreement that BB&T contends Beams entered into on the behalf of a third party, who subsequently defaulted on the loan at issue. In response, Beams asserts counterclaims of fraud, negligent misrepresentation, promissory estoppel, and violation of the Tennessee Consumer Protection Act and seeks compensatory and punitive damages. On January 23, 2009, the parties submitted an Agreed Pretrial Order for the District Court's consideration. [Doc. 63] The District Court entered that Order on January 29, 2009. [Doc. 67] A jury trial in this matter is scheduled to

commence on February 24, 2009.

The Pretrial Order includes the following agreement by the parties:

> STIPULATION TO BE ENTERED UPON PRODUCTION OF RECORDS
>
> BB&T has agreed that it will stipulate, from financial records recently provided and to be provided, its net worth and earnings figures or a reasonable approximation thereof which stipulation will provide that the parties agree that these numbers are agreed to by the parties as accurate net worth of BB&T admissible in the bifurcated punitive damages stage of the litigation, should such stage be necessary.

[Doc. 67 at ¶ F] The instant motions followed.

## II. Positions of the Parties

The plaintiff moves the Court to amend the Pretrial Order [Doc. 67] in this matter to either strike the portion of the Order indicating that the parties would enter a stipulation regarding plaintiff Branch Bank and Trust's ("BB&T") net worth or to find that the plaintiff's proposed stipulation [Doc. 69-3], coupled with the proposed agreed order [Doc. 69-4], satisfy the plaintiff's obligations under the Pretrial Order. As grounds, the plaintiff argues that it cannot disclose the information at issue without running afoul of securities regulations, specifically, the Securities and Exchange Commissions's Regulation FD, codified at 17 C.F.R. § 243.100. In turn, the defendant moves the Court to enforce the Pretrial Order and to compel the plaintiff to respond to the defendant's outstanding discovery requests regarding BB&T's finances. Each side opposes the other side's motion, with the plaintiff arguing that it should not be required to produce the information in question and that the Pretrial Order should either be revised, or the plaintiff's proposed stipulation and order accepted, and the defendant arguing that the Pretrial Order should be enforced and that the plaintiff's proposed stipulation and order are insufficient to satisfy the plaintiff's obligations

under the Pretrial Order.

**III.    Analysis**

**A.    Net Worth**

The stipulation at issue involves BB&T's "net worth and earnings figures or a reasonable approximation thereof" for use in the punitive damages phase of this litigation, if necessary.[1] In its motion, the plaintiff argues that it is unaware of SEC regulations or Generally Accepted Accounting Principles which define the term "net worth", arguing that the basic financial information provided to the defendant should be sufficient. Net worth is defined by Black's Law Dictionary as "[a] measure of one's wealth, usually calculated as the excess of total assets over total liabilities." Black's Law Dictionary (8th Ed. 2004). The Tennessee Court of Appeals agrees, and has taken judicial notice of the fact that "one of the most basic elements of accounting of which this [c]ourt takes judicial knowledge is that the net worth of a person or corporation equals total assets minus total liabilities. If there are not liabilities, the total of assets and net worth are identical." Hudson v. Hudson, No. 86-226-II, 1987 Tenn. App. LEXIS 2426 at *4-5 (Tenn. Ct. App. Jan 7, 1987).

Net worth is also often also referred to as equity, stockholders' equity, or owners' equity. See David R. Herwitz & Matthew J. Barrett, Accounting for Lawyers 3 (4th ed. 2006) ("The difference between what a business owns--its assets --and what it owes--its liabilities --represents its net worth, which accountants sometimes refer to as equity."); Black's Law Dictionary (8th Ed. 2004) (defining owners' equity as "[t]he aggregate of the owners' financial interests in the assets of a business entity; the capital contributed by the owners plus any retained earnings. Owners'

---

[1]Under Tennessee law, the factors a jury may consider when determining punitive damages include the "financial affairs, financial condition, and net worth" of the relevant party. Hodges v. S. C. Toof & Company, 833 S.W.2d 896, 901 (Tenn. 1992).

equity is calculated as the difference in value between a business entity's assets and its liabilities. Also termed (in a corporation) shareholders' equity, stockholders' equity."). The Court takes judicial notice of the fact that BB&T's own website defines the term "net worth" as "the value of all your assets, minus the total of all your liabilities. Put another way, it is what you own minus what you owe."[2] BB&T Financial Planning Center: Net Worth, http://www.bbt.com/bbt/Calculators/NetWorth.html (last visited Feb. 11, 2009). Accordingly, the Court finds that, for the purposes of the punitive damages phase of this lawsuit, net worth is defined as total assets minus total liabilities. The Court further finds that, based on the arguments of the plaintiff, for the purposes of this litigation, the net worth, as defined above, of the parent BB&T Corporation shall serve as a "reasonable approximation" of the defendant's net worth.

**B.    Regulation FD**

The Court next addresses the plaintiff's arguments that it cannot disclose its net worth in this instance without violating Regulation FD. Regulation FD provides, in pertinent part, that:

> Whenever an issuer, or any person acting on its behalf, discloses any material nonpublic information regarding that issuer or its securities to any person described in paragraph (b)(1) of this section, the issuer shall make public disclosure of that information as provided in § 243.101(e): (1) Simultaneously, in the case of an intentional disclosure; and (2) Promptly, in the case of a non-intentional disclosure.

17 C.F.R. § 243.100 (a). The regulation further provides that "[e]xcept as provided in paragraph (b)(2) of this section, paragraph (a) shall apply to a disclosure made to any person outside the issuer" who falls within a list of specific persons, including, but not limited to: brokers, dealers, investment

---

[2] Given that the plaintiff's own website offers the same definition of net worth proposed by the defendant, the Court finds the plaintiff's confusion over the definition even more troubling.

4

advisers, institutional investment managers, investment companies, or, in certain circumstances, a holder of the issuer's securities. Id. at (b)(1). The regulation also establishes several exceptions, including that the regulation will not apply "[t]o a person who expressly agrees to maintain the disclosed information in confidence." Id. at (b)(2).

The Sixth Circuit has described Regulation FD as prohibiting "a corporation from making selective disclosures of nonpublic, material information by requiring public disclosure once the private disclosure has been made." J&R Mktg. v. GMC, 549 F.3d 384, 393 (6th Cir. 2008) (citing 17 C.F.R. § 243.100(a) (2006)). Other courts have described the regulation as follows:

> In general terms, Regulation FD prohibits a company and its senior officials from privately disclosing any material nonpublic information regarding the company or its securities to certain persons such as analysts or institutional investors. SEC v. Siebel Sys., Inc., 384 F. Supp. 2d 694, 696 (S.D.N.Y. 2005). If the company makes selective disclosure of material nonpublic information, it must disclose the same information publicly.

CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP, 562 F. Supp. 2d 511, 525 (S.D.N.Y. 2008). In describing the materiality requirement, courts have held that:

> With regard to the definition of "materiality," the Adopting Release embraced the definition set forth in TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438 (1976), concluding that "information is material if 'there is a substantial likelihood that a reasonable shareholder would consider it important' in making an investment decision." Fed. Reg. 51716, 51721 (quoting TSC Indus., Inc., 426 U.S. at 449 (1976)). To satisfy the materiality element, there must be a substantial likelihood that a reasonable investor would have considered the information as having significantly altered the 'total mix' of information made available. Id.

SEC v. Siebel Sys., 384 F. Supp. 2d 694, 703 (S.D.N.Y. 2005). The Seibel Systems court further held that "[a]s long as the private statement conveys the same material information that the public statement publicly conveyed, Regulation FD is not implicated, and hence no greater form of

5

disclosure, pursuant to the regulation, is required." Siebel Sys., 384 F. Supp. 2d at 705.

Thus, based on the jurisprudence cited above, Regulation FD is only invoked when a regulated entity, such as BB&T, makes a material, nonpublic disclosure to one of the specified persons or entities, and in the event of a qualifying disclosure, Regulation FD merely requires that the disclosing entity also publicly disclose the same information. In addition, a non-public disclosure which does not alter the "total mix" of information already publicly available does not trigger Regulation FD. Furthermore, even in the event of an otherwise qualifying disclosure, Regulation FD does not apply when the nonpublic disclosure is made to a party who is bound to maintain the confidentiality of the disclosed information.

In this instance, the plaintiff's publicly disclosed balance sheet clearly establishes its total assets, total liabilities, and equity. [Doc. 85-2] As the Court held above, net worth is equal to total assets minus total liability, and the term "net worth" is generally interchangeable with the term "equity." Thus, not only has BB&T publicly disclosed the numbers necessary to calculate net worth, but by disclosing its equity, as required, on its balance sheet, it has also publicly disclosed the very figure it claims that it cannot now disclose. For the 2007 fiscal year, the plaintiff's balance sheet shows total assets of $132,618,000,000.00, total liabilities of $119,986,000,000, and equity of $12,632,000,000.00. Total assets ($132,618,000,000.00) minus total liabilities ($119,986,000,000.00) equals net worth (or equity), resulting in a net worth of $12,632,000,000.00, as shown on the plaintiff's balance sheet under equity. In addition, the plaintiff has stipulated its net worth in at least one other recent case, despite the plaintiff's arguments to this Court that it cannot stipulate its net worth without violating securities regulations. Saunders v. Equifax Info.

Servs., L.L.C., 469 F. Supp. 2d 343, 347-348 (E.D. Va. 2007) ("The parties[3] also stipulated that the net worth of BB&T was $3,271,115,000, and that fact was presented to the jury for its consideration by trial exhibit").

Accordingly, the Court finds that the plaintiff's arguments that it cannot stipulate its net worth without violating Regulation FD to be baseless and completely misplaced. The information in question has already been publicly disclosed by BB&T, thus Regulation FD would not be triggered, and BB&T has stipulated to its net worth in the past. The Court has reviewed the cases cited by the plaintiff in support of its motions, but finds that those cases do not support the plaintiff's position that revealing its net worth would trigger Regulation FD. Those cases do address a party resisting non-public disclosures for fear of violating Regulation FD, but neither of the cases stands for the proposition that a disclosure of net worth violates Regulation FD. See Madison Real Estate Immobilienanlagegesellschaft Beschrankt Haftende KG v. Kanam USA XIX Limited Partnership, No. 2863-VCP, 2008 WL 1913237 at * 3 (Del. Ch. May 1, 2008) (citing the defendant's argument that it had a duty under Regulation FD to resist disclosing nonpublic financial information, with the requested information including information related to square footage, rent, and lease terms, average sales, the terms of the property's debt, and defendant's property level financial statements); Liljeberg Enterprises International, LLC v. Vista Hospital of Baton Rouge, Inc., No. Civ.A. 04-2780, 2005 WL 1309158 at * 2 (E.D. La. May 19, 2005) (noting that a state court ordered that a deposition proceed under seal over objections that the content would require the witness to disclose nonpublic information). The plaintiff has cited to no case law which holds that stipulating to a company's net worth violates Regulation FD, and the Court is aware of none. Nor does a fair

---

[3]The Court notes that BB&T was a defendant in that case.

reading of Regulation FD in any way lend itself to the plaintiff's claims.

In so ruling, the Court acknowledges the plaintiff's arguments that, normally, a party is not required to stipulate to its financial condition. Stipulations are not required, but instead are matters of agreement. However, in this case, the plaintiff specifically agreed to enter into the stipulation at issue and allowed that agreement to be incorporated into the Pretrial Order without prior objection. In the absence of good cause for violating that agreement, which the plaintiff has not shown, the Court will not allow the plaintiff to violate the terms of the Pretrial Order.

Therefore, the Court finds that the plaintiff's motions [Docs. 68, 69] are not well taken and the same are hereby **DENIED**. The plaintiff shall directly stipulate to its net worth on or before **February 17, 2009**, with the understanding that the net worth of the parent BB&T Corporation shall be deemed a "reasonable approximation" of the defendant's net worth. Failure to produce a stipulation as agreed to in the Pretrial Order will result in the imposition of additional sanctions and penalties, up to and including finding the plaintiff in contempt of this Order and in further contempt of the District Court's Pretrial Order.

**C.     Defendant's Motions**

The defendant moves the Court to enforce the Pretrial Order in this matter. [Doc. 85] In the alternative, the defendant also moves the Court to compel the plaintiff to respond to interrogatories and requests for production of documents regarding the plaintiff's financial condition. [Doc. 84] For the reasons set forth more fully above, the plaintiff's motion to enforce the Pretrial Order [Doc. 85] is hereby **GRANTED**, and the plaintiff shall be required to comply with the Pretrial Order, as set forth above. In addition, the defendant's motion to compel [Doc. 84] is **GRANTED** to the extent that the plaintiff's required stipulation shall provide the information the defendant

seeks, the plaintiff's net worth.

**D.     Sanctions**

After considering the arguments of counsel, the Court finds that sanctions are appropriate in this matter. Specifically, the Court finds that the plaintiff's baseless arguments and unjustified refusal to satisfy its obligations under the Pretrial Order have needlessly and unreasonably multiplied the proceedings in this matter, have forced the defendant to file a motion to compel to seek the information to which the plaintiff had previously agreed to stipulate, and, given that the plaintiff has previously stipulated to its net worth in at least one other court in the recent past, coupled with the plaintiff's failure to offer any reasonable legal basis in support of its claims, represents an act of bad faith on the part of the plaintiff. Thus, the Court draws on a number of sources for the authority to impose sanctions in this matter, including Rules 11 and 37 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the inherent powers of the Court to punish bad faith conduct. See Chambers v. NASCO, Inc., 501 U.S. 32, 50 (U.S. 1991) (holding that a federal court has the inherent power to sanction bad faith conduct that extends beyond the sanctioning powers provided by the Federal Rules of Civil Procedure or by statute).

Based upon its review of the parties filings, the Court finds that the plaintiff should be sanctioned as follows: the plaintiff Branch Bank & Trust Company is hereby **ORDERED**, within thirty days of the entry of this Order, to pay the defendant Gary S. Beams the amount of $11,601.50 as sanctions in the form of attorney's fees and costs for the plaintiff's non-compliance with the Pretrial Order, failure to cooperate in discovery, and making baseless filings with the Court.

9

### E. Plaintiff's Supplement

As the Court was preparing to enter this Order, the plaintiff filed a supplement to its motions, including what it describes as its fifth proposed stipulation. [Doc. 96] After reviewing the fifth proposed stipulation, it appears to the Court that the plaintiff has now changed its position and is willing to directly stipulate to its net worth, as required by the Court above. However, the Court finds that the imposition of sanctions, as described above, remains necessary and appropriate to compensate the defendant and defense counsel for the effort expended in overcoming the plaintiff's unjustified refusal to satisfy its obligations under the Pretrial Order.

### IV. Summary

For the reasons and to the extent set forth more fully above, the plaintiff's motions to amend the Pretrial Order [Docs. 68, 69] are hereby **DENIED** and the defendant's motion to enforce the Pretrial Order [Doc. 85] and motion to compel [Doc. 84] are hereby **GRANTED**. The plaintiff shall directly stipulate to its net worth, as described above, on or before **February 17, 2009**. In addition, the plaintiff Branch Bank & Trust Company is hereby **ORDERED**, within thirty days of the entry of this Order, to pay the defendant Gary S. Beams the amount of $11,601.50 as sanctions in the form of attorney's fees and costs for the plaintiff's non-compliance with the Pretrial Order, failure to cooperate in discovery, and making baseless filings with the Court.

**IT IS SO ORDERED.**

ENTER:

    s/ H. Bruce Guyton
United States Magistrate Judge